UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GEORGIANA M. WINTERS** | **CIVIL ACTION** |
| **VERSUS** | **No. 06-4264** |
| **U.S. DEPARTMENT OF AGRICULTURE** | **SECTION: I/3** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of defendant, Mike Johanns, Secretary for the United States Department of Agriculture, against plaintiff, Georgiana M. Winters.[1] For the following reasons, the motion is **GRANTED**.

### *BACKGROUND*

Plaintiff was employed as an Equal Opportunity Assistant ("OA") at the National Finance Center ("NFC"), a department of the U.S. Department of Agriculture ("USDA"), in New Orleans, Louisiana.[2] Donald R. Lewis ("Lewis"), plaintiff's supervisor during the relevant time period, was the acting Equal Employment Opportunity ("EEO") Manager of the EEO staff.[3]

On July 2, 2001, plaintiff was notified that she was not selected for the position of Equal Employment Specialist ("EES"),[4] for which she applied, although she was on the Roster of Best

---

[1] R. Doc. No. 30.

[2] R. Doc. No. 24-19, Mot. Summ. J., Ex. 14, Lohfink Decl; R. Doc. No. 1-2, Compl. Attach., EEOC Appeal Decision, p. 2.

[3] R. Doc. No. 24-23, Def. Ex. 18, Lohfink Second Decl. Lewis became plaintiff's supervisor on January 13, 2001, and remained her supervisor until her reassignment on July 25, 2001. *Id.*; R. Doc. No. 24-18, Def. Ex. 13, Reassignment Letter.

[4] Defendant states that the selection decision was made on May 22, 2001, the date on which Lewis completed the Selection Justification. R. Doc. No. 24-4, Mem. Supp., p. 12; R. Doc. No. 24-15, Def. Ex. 10, Lewis Selection Justification.

Qualified for the position.[5]  The selected employee was Patricia A. Bachemin ("Bachemin").[6]

In choosing Bachemin for the EES position, Lewis discussed the candidates for the position with his supervisor, Cyrus G. Lohfink ("Lohfink"), Deputy Director of the NFC.[7] Lohfink read the candidate's submitted packages and, based upon the information he had, he could not articulate a "stronger case for another candidate" than the one selected.[8]  Lewis stated in the Selection Justification that he chose Bachemin "due to her continuous efforts and self-initiative over the last 11 years to improve the work environment for employees with disabilities as well as the oversight she has provided to EEO committee members and Special Emphasis Program teams."[9]

On July 23, 2001, Lewis was contacted by an EEO counselor and notified of plaintiff's EEO activity.[10]  On July 25, 2001, plaintiff received a letter from Lewis regarding her reassignment based upon a conflict of interest.[11]  The letter referenced plaintiff's informal EEO complaints and her representation in those matters by James Ferguson ("Ferguson"), who was

---

[5] R. Doc. No. 24-11, Def. Ex. 6, Roster of Best Qualified; R. Doc. No. 24-6, Def. Ex. 1, EEO Compl Acceptance Letter.  The position was announced and described in Vacancy Announcement number NFC-01-018.  R. Doc. No. 24-9, Def. Ex. 4, Vacancy Announcement.

[6] R. Doc. No. 24-11, Roster of Best Qualified.  Bachemin is a Caucasian female who is seven years younger than plaintiff, but Bachemin was over forty years old at the time she was selected for the position.  *Id.*

[7] R. Doc. No. 24-13, Ex. 8, Lohfink Aff.

[8] *Id.*

[9] R. Doc. No. 24-15, Lewis Selection Justification.  Defendant notes that Lewis' Selection Justification is dated May 22, 2001.  *Id.*

[10] R. Doc. No. 24-12, Def. Ex. 7, Lewis Aff.  Plaintiff first notified an EEO counselor of her complaints on July 2, 2001.  R. Doc. No. 24-7, Def. Ex. 2, Woodyard Decl.

[11] R. Doc. No. 24-18, Reassignment Letter.

also the attorney for complainants in sixty out of seventy other EEO cases at the NFC.[12] According to the letter, plaintiff's duties required her "to interact with representatives of complainants . . . in [sic] behalf of the [NFC]. . . . As [OA], [plaintiff is] continuously exposed to sensitive information relating to EEO cases filed against the [NFC] as a representative of the [NFC]."[13]

Lewis had spoken about this reassignment with his supervisor, Lohfink.[14] Lohfink took no action to stop the reassignment because he "agreed with Lewis' management decision and found it to be in the best interest of the NFC."[15] Plaintiff was detailed[16] and reassigned that day to the position of secretary in the National Services Division.[17]

Plaintiff filed two separate EEO complaints of discrimination against the NFC.[18] The first was formally filed on August 21, 2001, and the second on March 29, 2002.[19] On September 20, 2003, the USDA issued its Final Agency Decision ("FAD"), in which it determined "that there was no discrimination with respect to any of the claims and allegations brought forth by the

---

[12] *Id.*

[13] *Id.*

[14] R. Doc. No. 24-19, Def. Ex. 14, Lohfink Decl.

[15] *Id.*

[16] Detail is defined as: "A temporary assignment of an employee to a different position or to perform different duties for a specified period, with the employee returning to regular duties at the end of the period." USDA, Merit Promotion Plan 4 (1999).

[17] R. Doc. No. 24-22, Def. Ex. 17, Polleck Second Decl.

[18] R. Doc. No. 24-6, Def. Ex. 1, EEO Compl. Acceptance Letter.

[19] *Id.*

Plaintiff."[20]  The Equal Employment Opportunity Commission ("EEOC") affirmed the FAD's findings on May 16, 2006, with the exception of the FAD finding that plaintiff had not been retaliated against when she was reassigned.[21]

On August 14, 2006, plaintiff filed this complaint.[22]  Plaintiff alleges that she was discriminated against on the basis of age, which resulted in her nonselection for a position, and retaliated against when she was reassigned.[23]  Plaintiff seeks back pay, reinstatement, fringe benefits, attorney's fees, compensatory damages, and past and future medical damages.[24]

On August 21, 2007, defendant filed a motion for summary judgment claiming that plaintiff's claims should be dismissed due to:  (1) plaintiff's inability to establish a disparate-treatment case based upon her age; and (2) plaintiff's inability to establish a case of retaliation.[25]

## *LAW AND ANALYSIS*

**I.    Standards of Law**

*A.    Summary Judgment*

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories, and . . . affidavits," the court determines that there is no issue of material fact. Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial

---

[20] R. Doc. No. 24-7, Def. Ex. 2, Woodyard Decl.

[21] *Id.*; R. Doc. No. 1-2, Compl. Attach., EEOC Appeal Decision, p. 12.

[22] R. Doc. No. 1, Compl.

[23] *Id.* ¶¶ 2-4, 13.  At a telephone conference on October 3, 2007, plaintiff orally amended and clarified her complaint to include only the age discrimination claim, which resulted in nonselection, and the retaliation claim, which resulted in reassignment.  R. Doc. No. 59.

[24] *Id.* ¶ 17.

[25] R. Doc. No. 24-4, pp. 1-2, 9.

-4-

responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

*B.     ADEA Claim*

The Age Discrimination in Employment Act ("ADEA") authorizes federal employees to bring claims for discrimination based on age. ADEA of 1978 § 15, 29 U.S.C. § 633a (2006); *Boehms v. Crowell*, 139 F.3d 452, 462 (5th Cir. 1998). The ADEA makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." ADEA § 4(a)(1), 29 U.S.C. § 623(a)(1); *see Patrick v. Ridge*, 394 F.3d 311 (5th Cir. 2004) (applying the ADEA in a failure to promote case).

An ADEA claim may be brought either under a disparate-treatment or a disparate-impact theory of recovery. *Page v. U.S. Indus., Inc.*, 726 F.2d 1038, 1045 (5th Cir. 1984) (*citing Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335-36, 97 S. Ct. 1843, 1854, 52 L. Ed. 2d 396 (1977)); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609-10, 113 S. Ct. 1701, 1706, 123 L. Ed. 2d 338 (1993) ("The disparate treatment theory is of course available under the ADEA, as the language of that statute makes clear."). A disparate-treatment claim is one in which the employer treats some employees less favorably based upon one of the protected traits, *i.e.*, those practices motivated by discriminatory intent, while disparate-impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another," *i.e.*, those practices that have a discriminatory consequence. *Int'l Bhd. of Teamsters*, 431 U.S. at 335 n. 15, 97 S. Ct. at 1854 n. 15; *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S. Ct. 849, 854, 28 L. Ed. 2d 158 (1971).

The complainant in an ADEA disparate-treatment claim "must carry the initial burden . . . of establishing a prima facie case of . . . discrimination" by a preponderance of the evidence.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).  In order to establish a prima facie case of disparate-treatment discrimination based upon age, the complainant must show that:  (1) she is at least forty years of age,[26] (2) she was qualified for a position for which the employer was seeking applicants, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated.  *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998).

Once the complainant has met this initial burden, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the employment decision.  *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093.  The burden is one of production and not persuasion.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000).  It cannot, therefore, involve a credibility assessment.  *Id.*  If the defendant carries this burden, the burden shifts back to the complainant to prove that the reasons given for the employment decision were merely a pretext for discrimination.  *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093.

In order for a complainant to avoid summary judgment, he "must present evidence that both (1) rebuts the employer's non-discriminatory reason, and (2) creates an inference that [the protected trait] was a determinative factor in the challenged employment decision."  *Ross v. Univ. of Tex.*, 139 F.3d 521, 525 (5th Cir. 1998).  Proof of the employer's discriminatory intent

---

[26] "The prohibitions in [the ADEA] shall be limited to individuals who are at least 40 years of age."  ADEA § 12, 29 U.S.C. § 631.

is a critical requirement.  *Hazen Paper*, 507 U.S. at 609-10, 113 S. Ct. at 1705-06 ("In a disparate treatment case, liability depends on whether the protected trait . . . actually motivated the employer's decision."); *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 292 F.3d 221, 225 & n.6 (5th Cir. 2002).

Situations in which an adverse employment action has been taken for both discriminatory and nondiscriminatory reasons are also unlawful employment practices within the meaning of the ADEA.  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 310-11 (5th Cir. 2004) (holding that the mixed-motive framework is applicable in ADEA claims).  Accordingly, if the complainant cannot prove that discrimination is the sole reason for an adverse employment action, but contends that discrimination was a motivating factor for the action, a mixed-motive test is applied.  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). This test allows the complainant to rebut an employer's articulated reason for taking the employment action by either showing pretext, as discussed above, or by showing "that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination."  *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).[27]

*C.     Retaliation Claim*

Title VII makes it unlawful for an employer to deprive any individual of employment opportunities, to adversely affect an employee's status, to refuse to hire, or "otherwise to discriminate with respect to [an employee's] compensation, terms, conditions, or privileges of

---

[27] In a mixed-motive case, an employer cannot prevail with respect to the issue of whether the employer intentionally discriminated against its employee by offering a sufficient and legitimate reason for its decision when that reason did not motivate the employer at the time of its decision.  *Patrick v. Ridge*, 394  F.3d 311, 318-19 (5th Cir. 2004).

employment, because of such individual's race, color, religion, sex, or national origin."[28]  Civil Rights Act of 1964, tit. VII, § 704(a), 42 U.S.C. § 2000e-2(a) (2006).  It is an unlawful employment practice for an employer to retaliate against any employee "because he has opposed any practice made an unlawful employment practice by [Title VII]."  Civil Rights Act § 704(a), 42 U.S.C. § 2000e-3(a); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).  Similarly, the ADEA provides:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual, member or applicant for membership has opposed any practice made unlawful by [the ADEA], or because such individual member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA].

ADEA § 4(d), 29 U.S.C. § 623(d); *see Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225-26 (5th Cir. 1996).[29]

A retaliation claim requires plaintiff to make a prima facie showing that:  (1) plaintiff engaged in a statutorily protected activity, (2) an adverse employment action occurred, and (3) there is a causal link between the protected activity and the adverse employment action.  *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 n.3 (5th Cir. 2007); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004); *see Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994) (outlining the prima facie retaliation case in ADEA cases, which is the same as in Title VII cases).  Retaliation claims are subject to the same burden-shifting analysis as

---

[28] Congress brought federal employees within the ambit of Title VII, as is the case with the ADEA discussed above.  *Chandler v. Roudebush*, 425 U.S. 840, 841, 96 S. Ct. 1949, 1950, 48 L. Ed. 2d 416 (1976) (*quoting* S. Rep. No. 92-415, at 16 (1971)); *see Loeffler v. Frank*, 486 U.S. 549, 559, 108 S. Ct. 1965, 1971, 100 L. Ed. 2d 549 (1988) ("Congress simultaneously provided federal employees with a cause of action under Title VII and effected a waiver of the Government's immunity from suit.").

[29] Plaintiff's claims before the EEOC involved discrimination in violation of Title VII and the ADEA.  R. Doc. No. 1-2, Compl. Attach., EEOC Appeal Decision, p. 1.

other types of discrimination claims. *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001). Further, the mixed-motive test is available in retaliation claims. *Richardson*, 434 F.3d at 334-35.

**II.     Discussion**

*A.     Plaintiff's Nonselection for Position*

Plaintiff alleges disparate treatment in that she was not selected for the position of EES because of her age. Plaintiff meets her burden of establishing a prima facie age discrimination claim. First, she is a member of a protected class as a person over the age of forty. Second, plaintiff has presented evidence that she was qualified for the position.[30] Third, plaintiff suffered an adverse employment action in that she was not selected for the promotion to the EES position.[31] Finally, plaintiff meets the fourth requirement because a younger person was chosen for the EES position.[32] The burden of production now shifts to defendant to prove a nondiscriminatory reason for the employment decision.

Defendant has provided sufficient evidence to show that the chosen candidate was better

---

[30] R. Doc. No. 24-11, Def. Ex. 6, Roster of Best Qualified; *see* R. Doc. No. 24-9, Def. Ex. 4, Vacancy Announcement (outlining the EES position and the qualifications and skills required); R. Doc. No. 24-16, Def. Ex. 11, Supplemental Statements of Qualifications by Plaintiff and Bachemin (each detailing their own qualifications for the EES position).

[31] Failure to promote is an actionable adverse employment action. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007).

[32] "The final prong of establishing a prima facie case of age discrimination required [plaintiff] to show that he was replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of his age." *Berquist v. Wash. Mut. Bank*, No. 05-30956, 2007 WL 2460350, at *5 (5th Cir. Aug. 31, 2007). A complainant can satisfy the elements of a prima facie case "even where an employee has been replaced by someone of the same" protected class. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). "While not outcome determinative," whether the employment action favored a person of the same protected class "is certainly material to the question of discriminatory intent." *Nieto v. L&H Packing Co.*, 108 F.3d 621, 623-24 & n.7 (5th Cir. 1997); *McCorstin v. U.S. Steel Corp.*, 621 F.2d 749, 754 (5th Cir. 1980) (noting that because the discrimination was based on age, "a requirement that the replacement be from a nonprotected group fails to take the reality of the working place into account"). Although Bachemin was also over forty, plaintiff contends that she was not picked because she, *i.e.*, plaintiff, is older. R. Doc. No. 24-11, Roster of Best Qualified.

qualified for the position.[33]  Generally, "choosing some other candidate because he is the best-qualified individual for the job is . . . a legitimate, nondiscriminatory reason for an adverse employment decision."  *Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004).  Accordingly, defendant has met its burden of production with respect to providing a nondiscriminatory reason for choosing another candidate over the plaintiff.

Plaintiff contends that the supervisor is not credible, which makes defendant's reason mere pretext, and that she is better qualified than the chosen candidate.[34]  In response to plaintiff's first argument, the credibility of the defendant's nondiscriminatory reason is not an issue before the Court on summary judgment.  *Patrick*, 394 F.3d at 318 ("We are also mindful of the Supreme Court's admonition that courts are not to assess the employer's credibility or the truthfulness of its reason at this stage of the inquiry.  This does not mean, however, that when an employer offers evidence of an otherwise legitimate, nondiscriminatory reason which unmistakably demonstrates that it *could not have motivated* the employer to deny the promotion to a qualified candidate, such an indisputable impossibility cannot satisfy the employer's burden of production." (emphasis in original)).

In response to plaintiff's second argument, the plaintiff can survive summary judgment if she is able to provide evidence that she is "clearly better qualified."  *Celestine v. Petroleos de Venezuells SA*, 266 F.3d 343, 356-57  (5th Cir. 2001).  "However, the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of

---

[33] R. Doc. No. 24-15, Def. Ex. 10, Lewis Selection Justification; R. Doc. No. 24-4, Mem. Supp., p. 10; R. Doc. No. 24-13, Def. Ex. 8, Lohfink Aff. (stating that Lohfink "could not make a stronger case for another candidate").

[34] R. Doc No. 44, Mem. Opp'n, pp. 7-8.

discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Id.* (*quoting Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).  Plaintiff offers supplemental statements submitted by plaintiff and Bachemin detailing each of their own qualifications for the job and the deposition testimony of Bachemin.[35]  The disparity in these qualifications, if any, is not so severe that no reasonable person could have chosen Bachemin over the plaintiff.[36]

Plaintiff also contends that the statement of Darrell M. Dupuy, Sr., ("Dupuy") that "based on his personal experience in attempting to get reassigned to the EEO Office from 1998 to 2000, . . . NFC wanted a younger, white female for that position," demonstrates Lewis' discriminatory intent.[37]  However, this statement could only be evidence of discriminatory intent if it was "'made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker.'" *Berquist v. Wash. Mut. Bank*, No. 05-20956, 2007 WL 2460350, at *6 (5th Cir. Aug. 31, 2007).  Dupuy was not the person responsible for making the decision to select plaintiff for the EES position, nor did he have leverage over that person, *i.e.*, leverage over Lewis.[38]  Therefore, plaintiff has not shown that the defendant's

---

[35] R. Doc. No. 57, Supplemental Mem. Opp'n, pp. 2-3; R. Doc No. 44-6, Def. Ex. 11, Supplemental Statements of Qualifications by Plaintiff and Bachemin; R. Doc. No. 57-2, Pl. Ex. 8, Bachemin Dep.

[36] Plaintiff contends that because Bachemin's credentials were "mere puffing," plaintiff was clearly more qualified.  R. Doc. No. 57, p. 2.  Even if Bachemin's credentials were less than she claimed in her application for the EES position, the inquiry is whether the information upon which Lewis based his selection showed that Bachemin was clearly less qualified than plaintiff.

[37] R. Doc. No. 44-8, Pl. Ex. 6, Dupuy Aff.

[38] Dupuy, who worked with both Bachemin and plaintiff, also stated in his affidavit that Bachemin "was doing higher level work than [plaintiff] and he strongly suspected that [Bachemin] would get the . . . position."  *Id.*

nondiscriminatory reason was a mere pretext for discrimination. The plaintiff has also not demonstrated that, even if the reason given by Lewis was valid, there were other discriminatory reasons motivating the nonselection of plaintiff.

*B.     Plaintiff's Detail and Reassignment*

Plaintiff has satisfied the first and third elements of a prima facie retaliation claim with respect to being detailed and reassigned. First, plaintiff engaged in protected activity when she filed her EEO complaints. Plaintiff meets the third element because there is a causal link between the reassignment and the protected activity.[39]

Defendant argues that plaintiff does not meet the second prong because the reassignment of plaintiff did not result in an adverse employment action for plaintiff.[40] Defendant has provided competent evidence that because the two positions were at the same pay grade, aligned similarly within the NFC hierarchy, had similar knowledge requirements, and were of the same type, *i.e.*, clerical and administrative support work, plaintiff did not suffer an adverse employment action.[41] Plaintiff contends that her new position required her to learn new skills which harmed her chances of advancement and, therefore, she suffered an adverse employment

---

[39] R. Doc. No. 24-18, Def. Ex. 13, Letter to Plaintiff Regarding Reassignment. The letter states that plaintiff is being represented by an attorney "on an informal EEO Complaint filed by you." *Id.* Filing EEO complaints is the protected activity. Because plaintiff was represented by an attorney who was also the attorney for several other complainants, plaintiff was reassigned in order to avoid a conflict of interest. *Id.*

[40] R. Doc. No. 24-4, Mem. Supp., pp. 14-19.

[41] *Id.* at pp. 15-17. Charles E. Polleck, who is employed as a Human Resources Specialist at the NFC declared that the two positions: (1) are indexed in the same grouping ("General Administrative, Clerical, and Offices Services") in the Office of Personnel Management Operating Manual, (2) are the same pay grade, (3) are similar in nature in that they are both "highly clerical and require knowledge of the specific business of the offices," (4) require acting as a liaison to other personnel within the office, and (5) are aligned similarly within the NFC hierarchy. R. Doc. No. 24-20, Def. Ex. 15, Polleck Decl. ¶¶ 1, 5-7, 12.

action.[42]

In order to establish an adverse employment action in retaliation disparate-treatment claims, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," which means that it could have dissuaded a reasonable worker from making or supporting a discrimination charge.[43] *Burlington N. & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006) ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms."); *Grice v. FMC Techs. Inc.*, 216 Fed. App'x 401, 407-08 (5th Cir. 2007) (discussing the *Burlington Northern* standard). Reassignment to a different position is not automatically actionable, but depends upon the totality of the circumstances judged from a reasonable person's perspective. *See White*, 126 S. Ct. at 2416-17 (holding that reassignment to a position that was more arduous, dirtier, required less qualifications, was viewed less prestigiously, and was considered a better job could be materially adverse to a reasonable employee); *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 209-10 (2d Cir. 2006) (holding that reassignment to a position with less responsibility, where the employee was stripped of broad discretionary and managerial functions, including supervising employees, and was forced to perform clerical work alongside lower-level personnel, could be materially adverse).

Outside of making an unsubstantiated allegation that her new job required her to learn

---

[42] R. Doc. No. 44, Mem. Opp'n, p. 8.

[43] *See Grice v. FMC Techs. Inc.*, 216 Fed. App'x 401, 404, 407 (5th Cir. 2007) (holding that an employee's subjective belief that he was retaliated against, without more, is insufficient to survive a summary judgment motion); *McGowan v. City of Eufala*, 472 F.3d 736, 742-43 (10th Cir. 2006) (holding that where the employer failed to reassign a plaintiff to a different shift when plaintiff identified no specific reason for desiring the change, there was no change in pay or benefits, and the shift plaintiff had was not more arduous than the desired shift, the challenged action was not materially adverse).

new skills, which harmed her chances of advancement,[44] plaintiff provides no evidence that a reasonable person would have found the reassignment to be materially adverse.[45]  *See McGowan v. City of Eufala*, 472 F.3d 736, 742 (10th Cir. 2006).  Without competent summary judgment evidence showing that she suffered a materially adverse employment action, plaintiff does not meet the second prong of the prima facie case.[46]

Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed by defendant is **GRANTED** and the above-captioned case is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, October __9th__, 2007.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[44] R. Doc. No. 44, Mem. Opp'n, p. 8.  Plaintiff has provided no evidence that she has had to learn new skills or that her chances of advancement have been harmed.  There is evidence, however, that plaintiff has received two grade increases since being reassigned.  R. Doc. No. 24-22, Def. Ex. 17, Polleck Second Decl. ¶ 3.

[45] Further, plaintiff was offered the opportunity to be reassigned to her OA position, which she declined.  R. Doc. No. 24-8, Def. Ex. 3, Letter to Compliance Officer.

[46] Even if plaintiff met this prong, defendant has articulated that plaintiff was reassigned due to a conflict of interest, which is a legitimate, nondiscriminatory reason for the reassignment.  *See* R. Doc. No. 24-18, Def. Ex. 13, Letter to Plaintiff Regarding Reassignment; *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999); *Jones v. Flagship Int'l*, 793 F.2d 714, 726 (5th Cir. 1986).  The plaintiff has not rebutted this reason.